EMILYROSE JOHNS, SBN 294319
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Email: emilyrose@siegelyee.com

DEBORAH M. GOLDEN, *Pro Hac Vice Forthcoming*
THE LAW OFFICE OF DEBORAH M. GOLDEN
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
Telephone: (202) 630-0332
Email: dgolden@debgoldenlaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.M., | ) Case No. |
| | ) |
| Plaintiff, | ) **COMPLAINT FOR DAMAGES AND JURY** |
| | ) **DEMAND** |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA, EDDIE | ) |
| SOLORIO in his individual capacity, | ) |
| | ) |
| Defendants. | ) |

### INTRODUCTION

1. Plaintiff M.M. served a sentence in the Bureau of Prisons ("BOP") and was housed at the Federal Corrections Institution Dublin ("FCI Dublin"), known openly at the time as "the Rape Club."

2. While incarcerated, Officer Eddie Solorio sexually harassed and abused Plaintiff M.M. on numerous occasions for his sexual gratification.

3. The BOP did nothing to protect her.

## JURISDICTION AND VENUE

4. An actual, present, and justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a).

5. This action involves claims arising under United States and California laws. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

6. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

7. Assignment is appropriate in the Oakland Division of this Court because that is where "a substantial part of the events or omissions giving rise to the claim[s] occurred." Furthermore, several related cases have already been assigned to District Judge Yvonne Gonzalez Rogers, and Plaintiff M.M. will be filing an administrative motion to relate this case to those other cases.

## PARTIES

8. Plaintiff M.M. was at all times relevant here incarcerated in FCI Dublin and/or in the custody of the BOP.

9. Defendant United States of America Federal Bureau of Prisons ("BOP") is a governmental entity that operates and is in possession and control of the Federal Correctional Institute Dublin ("FCI Dublin"). FCI Dublin was a federal female low-security correctional institution that closed in April 2024.

10. Defendant Eddie Solorio was an officer at FCI Dublin during the relevant period and is sued in his individual capacity. While performing the acts and omissions that Plaintiff alleges in this complaint, Defendant Solorio was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

11. While acting and failing to act as alleged herein, Defendants had complete custody and total control of Plaintiff M.M. She was dependent upon Defendants for her personal security, necessities, and mental health care.

12. In performing the acts and/or omissions contained herein, Defendants, and each of them, acted under color of federal law, and Plaintiff M.M. is informed and believes each acted

maliciously, callously, intentionally, recklessly, with gross negligence, and with deliberate indifference to the rights and personal security of Plaintiff M.M. Each of them knew or should have known that their conduct, attitudes, actions, and omissions were, and are, a threat to Plaintiff M.M. and to her constitutionally and statutorily protected rights. Despite this knowledge, Defendants failed to take steps to protect Plaintiff M.M. and to ensure her rights to safety from sexual abuse.

## FACTS

13.     Plaintiff M.M. suffered ongoing sexual harassment and assault by Officer Solorio while housed at FCI Dublin starting in 2023.

14.     Although Defendant Solorio had a reputation for flirting with women and engaging in sexual relationships, he continued to have unfettered access to incarcerated women at Dublin.

15.     Initially, Defendant Solorio would comment on Plaintiff M.M.'s physical features, telling her that she was beautiful, that he liked the color of her skin, and that she had a "fat ass."

16.     At some point, Plaintiff M.M. noticed that Defendant Solorio and her roommate would make prolonged eye contact, and, in December 2023, she observed the two of them holding hands.

17.     Towards the end of January 2024, Defendant Solorio's conduct towards Plaintiff M.M. became increasingly more flirtatious.

18.     Between February and March of 2024, Defendant Solorio forced Plaintiff M.M. and her roommate to have sex for his enjoyment and sexual gratification.

19.     On the first such occasion, Plaintiff M.M.'s roommate told her they needed to have sex in front of Defendant Solorio because he was bringing in drugs for the roommate.

20.     Plaintiff M.M. feared that if she did not acquiesce, Defendant Solorio or her roommate would retaliate against her.

21.     Defendant Solorio controlled Plaintiff M.M.'s access to food, hygiene supplies, and other basic necessities, and she feared he would withhold these items if she did not comply.

22.     Plaintiff M.M. feared that her roommate would become physically violent with her if Defendant Solorio cut off her roommate's access to drugs.

23.   On this first occasion, at Solorio's direction, Plaintiff M.M.'s roommate performed oral sex on her.

24.   Defendant Solorio walked into their cell and watched the two of them.

25.   The second, third, and fourth encounters with Defendant Solorio were all similar.

26.   He directed Plaintiff M.M.'s roommate to perform oral sex on her while he watched from their cell, and each time Plaintiff M.M. acquiesced for fear of retaliation and physical violence.

27.   On the fifth occasion, Defendant Solorio made similar arrangements to have Plaintiff M.M.'s roommate perform oral sex on her for his enjoyment, but this time, he was not satisfied with simply watching.

28.   On that occasion, Defendant Solorio entered their cell and told Plaintiff M.M.'s roommate that he wanted to "see [her] hit it from behind".

29.   He gestured to a chair where her roommate had a homemade sex toy.

30.   Plaintiff M.M.'s roommate flipped Plaintiff M.M. over without her consent and then proceeded to penetrate her anally with the sex toy.

31.   Defendant Solorio, seemingly pleased, walked over to Plaintiff M.M. and tried to kiss her.

32.   He groped her left leg and then her buttocks.

33.   After Defendant Solorio left their cell, Plaintiff M.M. began crying uncontrollably due to the humiliation and pain of the encounter.

34.   The next time Defendant Solorio directed Plaintiff M.M.'s roommate to perform oral sex on her, it did not escalate past him watching, as with previous occasions.

35.   Plaintiff M.M. attempted to put an end to these encounters.

36.   As she feared, this created conflict between her and her roommate, who needed the sexual encounters to continue so that Defendant Solorio would bring her contraband and drugs.

37.   Plaintiff M.M.'s roommate continued to harass Plaintiff M.M. to engage in sexual acts for Defendant Solorio, but she declined.

38.    As Plaintiff M.M. feared, her roommate physically assaulted her for refusing to satisfy Defendant Solorio's predilections.

39.    After the assault, Plaintiff M.M. and her roommate were sent to the Special Housing Unit ("SHU").

40.    In the SHU, Plaintiff M.M. was housed in a room that did not have working features like running water. This room was not designed to be used for housing prisoners for 24 hours a day. Her roommate was put in a room with functioning features.

41.    The guards left Plaintiff M.M. overnight without blankets and would not give her medication, including her inhaler, even though the room had mold in it.

42.    When Plaintiff M.M. was finally placed in a cell with functioning features, she was assigned to the top bunk despite having a lower-bunk pass for a foot injury.

43.    While in the SHU from April 1 to April 23, 2024, Plaintiff M.M. was regularly detained past the time for legal calls so that they would have to be rescheduled.

44.    Each time there was a clothing exchange, she would receive ripped or tattered clothes.

45.    She complained to officers who, in response, made fun of her and mocked her.

46.    She filed grievances against them to no avail.

47.    Meanwhile, the officers gave Plaintiff M.M.'s roommate the orderly position while she was in the SHU, which allowed her to occasionally exit her cell.

48.    Plaintiff M.M.'s roommate would also receive visits from Defendant Solorio, and it was clear to Plaintiff M.M. that Defendant Solorio was arranging to give her roommate preferential treatment and to punish Plaintiff M.M.

49.    Plaintiff M.M. was put on encumbrance, which meant that BOP erased all her contacts so that she could not contact anyone.

50.    She had to go through the whole approval process again for all of her contacts.

51.    Her regular mail was being interfered with—it would either be sent back or it would take inexplicably long to get sent out.

52. The prison also put her account on encumbrance so that she could not purchase commissary items.

53. This was unusual because, while Plaintiff M.M. had heard of encumbrances following a prisoner being found guilty of a rules violation, these encumbrances occurred before any investigation that would have determined Plaintiff M.M.'s guilt.

54. When Plaintiff M.M. was transported to Waseca, she was menstruating.

55. She was denied any feminine hygiene products and was forced to bleed all over herself on the bus.

56. She was the first person off the bus, and when she exited, a transport officer placed her hands across her breasts to halt her.

57. She warned her that she must be respectful at Waseca.

58. This instilled fear in her and appeared to be designed to instill fear in the other Dublin survivors who were watching from the bus.

59. She reported this behavior immediately to a Lieutenant and the Assistant Warden.

60. Shortly after, Captain Coch began harassing her.

61. On one occasion, he and six other guards entered her room while she was sleeping.

62. They positioned themselves around her bed, and Captain Coch began violently shaking the bed.

63. She startled awake to find herself surrounded by guards. She was terrified.

64. When she woke up, Captain Coch began to laugh and said something to the effect of "oops, wrong bed".

65. Plaintiff M.M.'s first thought was that it was Defendant Solorio waking her up, and when the guards left, she began shaking and crying.

66. Captain Coch would often find other ways to harass her, such as ordering her to walk from one location to another, and then following her and chastising her for being in the wrong location that he had just ordered her to, and then ordering her to go back.

67. She feared reporting his behavior because reporting misconduct at Waseca was what put her in his crosshairs.

*M.M. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 6

68. Plaintiff M.M. found that she and the other women from Dublin were treated differently from other prisoners in Waseca.

69. They were written up for every infraction, whereas other prisoners would not be.

70. She was taken to the SHU on one of these occasions, and when she was stripped out, she was forced to undress in view of male guards.

71. She was denied a privacy screen, and the female guard with her did little to shield her nude body from the male guards.

72. This triggered Plaintiff M.M. and made her feel unsafe, like she was back in Dublin.

73. Plaintiff M.M. was devastated by what she experienced and felt like she was being used as a sex object.

74. She felt as if she had no ability to say no and that there was no one she could report this to.

75. Plaintiff M.M. has bipolar disorder and schizophrenia, and the harassment she experienced from officers when she attempted to file grievances caused her to have uncontrollable mood swings, culminating in two separate suicide attempts—one in approximately November 2024 and another in approximately March 2025.

76. Although she is no longer at FCI Dublin, she continues to have chronic nightmares about Defendant Solorio and suffers from PTSD regarding this sexual assault.

### EXHAUSTION

77. On December 31, 2024, Plaintiff M.M., through counsel, mailed an administrative claim under the FTCA to the BOP's Western Regional Office.

78. The BOP acknowledged receipt on January 23, 2025.

79. The BOP has not substantively responded to her claim.

### CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### GENDER VIOLENCE
### (against Defendant United States)
### (FTCA; Cal. Civ. Code § 52.4)

80. Plaintiff M.M. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

*M.M. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 7

81. Plaintiff M.M. brings this claim under the Federal Tort Claims Act for gender violence under California Civil Code § 52.4 against the United States based on the conduct of its employee Defendant Solorio.

82. The United States is named as a defendant for the acts of these individual employees under the Federal Tort Claims Act.

83. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

84. Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

85. Defendant Solorio discriminated against Plaintiff M.M. based on her gender when he repeatedly sexually abused her by physically subjecting her to sexual acts under coercive conditions.

86. By these acts, Defendant Solorio caused Plaintiff M.M. physical, mental, and emotional injuries as well as injury to her personal dignity.

**SECOND CLAIM FOR RELIEF**
**SEXUAL ASSAULT**
**(against Defendant United States)**
**(FTCA; California Common Law)**

87. Plaintiff M.M. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

88. Plaintiff M.M. brings this claim for sexual assault under the Federal Tort Claims Act for violation of California Common Law against the United States based on the conduct of its employee Defendant Solorio.

89. Defendant Solorio violated Plaintiff M.M.'s right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated.

90. Defendant Solorio's sexual abuse of Plaintiff M.M. was deeply offensive to her personal dignity and would offend a person of ordinary sensitivity.

91. Defendant Solorio subjected Plaintiff M.M. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff M.M.'s person.

92. By intentionally subjecting Plaintiff M.M. to sexual acts, Defendant Solorio acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

93. By repeatedly subjecting Plaintiff M.M. to sexual acts, Defendant Solorio caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

**THIRD CLAIM FOR RELIEF**
**SEXUAL BATTERY**
**(against Defendant United States)**
**(FTCA; Cal. Civ. Code § 1708.5)**

94. Plaintiff M.M. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

95. Plaintiff M.M. brings this claim for sexual battery under the Federal Tort Claims Act based on California Civil Code § 1708.5 against the United States for the conduct of its employee Defendant Solorio.

96. Defendant Solorio committed sexual battery against Plaintiff M.M. by repeatedly sexually abusing her while she was incarcerated at FCI Dublin.

97. The sexual abuse of Plaintiff M.M., a prisoner in the custody of the BOP, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

98. Defendant Solorio subjected Plaintiff M.M. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff M.M.'s person.

**FOURTH CLAIM FOR RELIEF**
**BATTERY**
**(against Defendant Solorio)**
**(FTCA; Cal. Civ. Code § 1708.5)**

99. Plaintiff M.M. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

100. Plaintiff M.M. brings this claim under the Federal Tort Claims Act for battery in violation of California Civil Code § 1708.5 against Defendant Solorio.

101. Defendant Solorio engaged in outrageous conduct by repeatedly subjecting Plaintiff M.M. to unwanted touching while she was incarcerated in his employer's custody. He abused his

authority over Plaintiff M.M. and his power to affect her in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

102. Defendant Solorio's unwanted touching caused Plaintiff M.M. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

103. Defendant Solorio intended to cause Plaintiff M.M. this harm because he knew that emotional distress was likely to result from his sexual abuse of a prisoner.

### FIFTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (against Defendant United States)
### (FTCA; California State Law)

104. Plaintiff M.M. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

105. Plaintiff M.M. brings this claim under the Federal Tort Claims Act for the intentional infliction of emotional distress against the United States based on the conduct of Defendant Solorio.

106. Defendant Solorio engaged in outrageous conduct by repeatedly subjecting Plaintiff M.M. to sexual acts while she was incarcerated in his employer's custody. He abused his authority over Plaintiff M.M. and his power to affect her in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

107. Defendant Solorio's sexual abuse caused Plaintiff M.M. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

108. Defendant Solorio intended to cause Plaintiff M.M. this emotional distress because he knew that emotional distress was likely to result from his sexual abuse of a prisoner.

///
///

## SIXTH CLAIM FOR RELIEF
## BANE ACT
## (against Defendant United States)
## (FTCA; Cal. Civ. Code § 52.1)

109.    Plaintiff M.M. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

110.    Defendant United States, by the actions of its employee Defendant Solorio, while Plaintiff M.M. was in custody and/or on supervised release, by threat, intimidation, and/or coercion, violated Plaintiff M.M.'s rights under California Civil Code § 52.1 by interfering with her right to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; her rights under the California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; and her right under the Eighth amendment to be free of cruel and unusual punishment.

111.    As a proximate result of these acts, Plaintiff M.M. sustained damage and injury.

## SEVENTH CLAIM FOR RELIEF
## TRAFFICKING VICTIMS PROTECTION ACT
## (against all Defendants)
## (18 U.S.C. § 1581, *et seq.*)

112.    Plaintiff M.M. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

113.    Defendant Solorio knowingly recruited, enticed, and solicited Plaintiff M.M. by threat, coercion, and manipulation and by offering benefits and things of value for engaging in sex acts.

114.    Defendant Solorio made Plaintiff M.M. engage in sex acts through threat, intimidation, coercion, and manipulation.

115.    This conduct has caused Plaintiff M.M. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm, and she has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. § 1595.

///

///

///

## EIGHTH CLAIM FOR RELIEF
### CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT
### (against all Defendants)
### (Cal. Civ. Code § 52.5)

116.    Plaintiff M.M. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

117.    Defendant Solorio knowingly recruited, enticed, and solicited Plaintiff M.M. by threat, coercion, and manipulation and by offering benefits and things of value for engaging in sex acts.

118.    Defendant Solorio made Plaintiff M.M. engage in sex acts through threat, intimidation, coercion, and manipulation.

119.    This conduct has caused Plaintiff M.M. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

### PUNITIVE DAMAGES

120.    In taking the actions described above, Defendant Solorio intentionally and maliciously violated Plaintiff M.M.'s civil rights and/or acted with reckless disregard as to whether his actions violated Plaintiff M.M.'s civil rights.

121.    In taking the actions described above, the individual Defendant Solorio acted with oppression, fraud, and/or malice.

122.    As such, Plaintiff M.M. claims punitive damages against Defendant Solorio in an amount to be determined by a jury.

### PRAYER FOR RELIEF

123.    Plaintiff M.M. prays for judgment against Defendants, and each of them, as follows:

(a)    An award of damages, including compensatory, special, punitive, and nominal damages, to Plaintiff M.M. in an amount to be determined at trial;

(b)    An award to Plaintiff M.M. of the costs of this suit and reasonable attorneys' fees and litigation expenses including expert witness fees; and

(c)    For such other and further relief as this Court may deem just and proper.

///

## JURY TRIAL DEMAND

124.    Plaintiff M.M. hereby respectfully demands a jury trial, pursuant to Rule 38 of the Federal Rules of Civil Procedure.


Dated: January 9, 2026

SIEGEL, YEE, BRUNNER & MEHTA


By:_____
     EmilyRose Johns


THE LAW OFFICE OF DEBORAH M. GOLDEN

By: /s/ *Deborah M. Golden*
     Deborah M. Golden
     DC Bar # 470-578
     Motion for *pro hac vice* forthcoming


*Attorneys for Plaintiff*

*M.M. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 13